04 APR 12 PM 3:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**CAROL BIRDYSHAW,**

**Plaintiff,**

**vs.**

**Civil Action No.:**

**DILLARD'S, INC., a/k/a CASTNER KNOTT DRY GOODS CO. d/b/a DILLARD'S,**

CV-04-B-0738-NE

**Defendant.**

**AMENDED, RESTATED AND RE-FILED COMPLAINT**

COME NOW the plaintiff in the above-styled cause and pursuant to order of the court in CV-02-B-2389-NE hereby amends and re-files her complaint as an individual complaint under the foregoing follows:

## I. JURISDICTION

1. The jurisdiction of the court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1343(a)(1)-(4), 1367, 2201 and 2202; 42 U.S.C. §§ 1981a, and 2000e et seq. as amended, and 29 U.S.C. § 216(b). This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 (as amended), the Civil Rights Act of 1991, and the Age Discrimination in Employment Act, and claims under state law. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights secured by the Fourteenth Amendment to the U.S. Constitution, Alabama Code § 11-47-190 (Supp. 2002), 42 U.S.C. §§ 1981a, 2000e et seq. as amended by the Civil Rights Act of 1991, and 29 U.S.C. § 621 et seq., providing for injunctive and other relief against sex discrimination and retaliation for filing charges of discrimination and other protected activity, and for age discrimination contrary to the laws of the United States and the State of

Alabama. Plaintiff also bring claims pursuant to the laws of the State of Alabama, and for the acts or omissions of Dillard's, Inc., for its negligent, wanton or intentional hiring, training, supervision and retention of Steven A. Moretti as manager of the Dillard's, Inc., Store Number 456 in Madison Square Mall in Huntsville, Alabama.

2. Plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII of the Act of Congress known as the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., as well as the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Plaintiff timely filed her charges of sex and age discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") within one hundred eighty (180) days of the alleged discriminatory activities and filed this complaint within ninety (90) days of the receipt of the effective date of the right to sue letters issued from the EEOC. Copies of the aforementioned EEOC charges and notices of right to sue are attached hereto as Exhibit A. Plaintiff is not a resident or citizen of any state where any defendant is a citizen, has its headquarters, has its principal place of business, or is incorporated. Plaintiff asserts claims for damages in excess of the jurisdictional threshold of 28 U.S.C. § 1332.

## II. PARTIES

3. Plaintiff Carol Birdyshaw ("plaintiff" or "Birdyshaw") is a female over forty (40) years of age, a citizen of the United States and a resident of Jefferson County, Alabama. She was employed by Defendant Dillard's, Inc. at its Store Number 456 in Madison Square Mall in Huntsville, Madison County, Alabama, and other Dillard's stores, during the time of the alleged acts of discrimination and other events relevant to her claims set forth herein.

4. Defendant Dillard's, Inc., ("Dillard's") is a for profit corporation, publically owned and traded on the New York Stock Exchange, and is qualified to do business in the State of Alabama, and is incorporated in the State of Delaware, and has its principal place of business in Little Rock, Arkansas. Dillard's owns and operates a nationwide chain of approximately three hundred thirty five (335) department stores (operated and controlled by Dillard's, and owned directly or through some intermediary or wholly owned subsidiary corporate or other organizational structure) ( for instance, Castner-Knott Dry Goods Co. which does business as Dillard's and may be the wholly owned subsidiary of Dillard's Inc. which technically owned Dillard's store Number 456) and employs approximately sixty thousand (60,000) employees. Plaintiff was employed by Dillard's at Dillard's Department Store Number 456 which is located in the Madison Square Mall in Huntsville, Alabama, and prior to that at other Dillard's locations in other states of the United States. Store Number 456 is part of the Middle Tennessee, North Alabama District for Dillard's. During the time of most of the alleged events in this Complaint, Rick Willey was the Director of Stores for the North Alabama, Middle Tennessee District, and Burt Squires, his supervisor, was Vice President of Dillard's and President of Dillard's Division Number 4, known as the Little Rock Division.

5. Plaintiff reserves the right to amend the complaint to add additional parties or claims as this matter proceeds pursuant to the Federal Rules of Civil Procedure and any scheduling, pre-trial, or other orders entered by the Court.

## III. FACTS

6. Dillard's acquired Store Number 456 in Madison Square Mall in Huntsville, Alabama, as part of a purchase of stores from the Mercantile Group in August 1998. The store had formerly been a Castner Knott store. A transfer of stock was completed in or around August 1999.

The store manager resigned approximately one year later, and Mary Davis, the assistant store manager (also known as operations manager) ("Davis"), served as interim manager until Steven A. Moretti ("Moretti") arrived as store manager for Dillard's in October 2000. Upon Moretti's arrival Davis continued as assistant store manager, and plaintiff worked under Davis's and Moretti's supervision. Moretti continued as store manager of that location until his termination by Dillard's on July 23, 2002, some two weeks after an incident wherein he reportedly chased an 18 year old African-American female in the mall area of Madison Square Mall on or about July 10, 2002, slashed her with a knife and otherwise manhandled her in an attempt to stop her for alleged shoplifting in the store. After his termination, and despite her failure to report to her supervisors the actions and behavior of Moretti discussed herein, Dillard's named Davis as store manager of Store No. 456.

7. Plaintiff served as an "area sales manager" ("ASM") at Store No. 456 both before and after Moretti's arrival. Each ASM oversees several departments within the store. Plaintiff was ASM over Cosmetics.

8. Plaintiff had worked with several Dillard's stores starting in June, 1996, and had relocated several times to further her career. She explained to her superiors that her goal was to become an assistant store manager (operations manager). She received good reviews and progressed on what she thought was a management track. However, she noticed she was being passed over for some openings for which she was qualified. Despite her good performance her store manager told her, "It looks like you are going nowhere with Dillard's." Although discouraged, she applied for an assistant store manager position in the Dillard's store in Oxford, Alabama, submitting her application

on August 22, 2000. As in all the previous positions for which she had applied, some time later, she was passed over for a younger male with less or equal qualifications as her.

9. Immediately upon Moretti's arrival in October, 2000, and following thereafter, the environment at Dillard's Store Number 456 took on a decidedly hostile and harassing attitude as Moretti and his superiors began eliminating older female managers, making derogatory age, sex and racial comments, and engaging in conduct designed to cause older female ASMs to resign or be terminated after write-ups for untrue or trivial charges.

10. Upon Moretti's arrival at Dillard's Store Number 456 in October, 2000, Rick Willey ("Willey"), the director of stores for the Middle Tennessee, North Alabama District, held a meeting of the ASMs to introduce Moretti. Willey asked each of the ASMs to introduce themselves. Plaintiff explained her background and experience, including working in three different Dillard's divisions. Willey responded sarcastically to the effect, "you need to find a husband that can keep a job and not move around so much," and laughed. Plaintiff was embarrassed and insulted by this remark. Willey made it clear that Moretti was hired to "clean up the store" and show a profit.

11. Moretti displayed his hostile and harassing behavior early on. He told plaintiff "not to make one decision without asking me first." He called her on the phone and screamed and yelled at her frequently. His hostility and constant interruptions affected her ability to perform her job; she became nauseous when she heard him page her on the public address system. Moretti became so angry on numerous occasions that plaintiff feared for her safety. The constant and continuing pressure and hostility of Moretti made plaintiff experience anxiety and problems sleeping at night, and other stress related symptoms, and prevented her, as it would any other reasonable woman in her place, from performing the duties and functions of her job.

12. On October 31, 2000, plaintiff was called to the office by Moretti and Davis. Moretti was upset because she had planned a cosmetic event on Saturday, October 28, 2000, without "obtaining his approval." The event had been planned prior to his arrival at the store and approved by the previous store manager. Davis was also aware of the event. When plaintiff attempted to explain this to Moretti, he stated "I don't give a shit. I'm the manager of this store now. You will do what I say or I'll get rid of you and every other worthless manager." He stated that Sylvia Parker was a prime example of a poor manager and "if you and the others can't do your damn job" he would find "someone who could."

13. On or about Saturday, November 18, 2000, Moretti held a department meeting with the cosmetic associates. During the meeting he mentioned he had "fired a manager" and had also fired "an associate from cosmetics," and would not be hiring anymore female applicants that looked like "gang bangers." On Friday, November 24, 2000, plaintiff informed Davis that they needed to hire more people to staff cosmetics, and Davis told plaintiff to "find some." Plaintiff went through the application file and called approximately six people for interviews. On Saturday, November 25, 2000, she and Davis interviewed and hired three part-time associates for cosmetics. After Davis conducted the second interviews, the paperwork was completed and training classes were confirmed. However, within the hour, plaintiff was called into Davis's office, where store manager Moretti was waiting. He questioned her about the hiring of the cosmetic associates. Davis asked her why she had not hired a counter manager for Estee Lauder. As Davis had the second interviews on the applicants and suggested starting salaries, she was aware of their skills and qualifications, and if she thought one was suitable for a "counter manager" position she could have hired them. Plaintiff explained that she had hired a Lancome counter manager the previous week and was confident she

could find one for Estee Lauder. Moretti asked her why she had not approached any of the current Dillard's associates for the Estee Lauder positions. Plaintiff responded that she had asked Davis for the names of qualified associates but Davis had told her there were none making the sales per hour (SPH) or otherwise eligible for promotion under Dillard's policies. Davis stated it was "not her job" to fill cosmetic positions and that plaintiff needed to go out into the mall and "solicit" the employees working for other stores. Plaintiff told Moretti that she had asked the other ASMs to keep in mind any associates who might want to transfer and even made this announcement during a Monday manager's meeting. Moretti challenged her response and called plaintiff a "liar" and yelled that she had not approached any Dillard's associates or spoken to any managers. Plaintiff stated that she was not a "liar." Moretti screamed at her "bull shit" and "you're a liar" and said "I'll call every manager down here to prove it, I don't give a damn what you say." He jumped up and down from his seat, flung his arms, and approached plaintiff in an aggressive and threatening manner, making her fear for her personal safety. The door was open and plaintiff, an accomplished professional woman, was embarrassed by the outburst, especially as sales associates were outside the door listening. Moretti continued yelling "bull shit" at her. Plaintiff looked at him, collected her composure and said, "Steve, your language is inappropriate and I don't appreciate it." She told Davis, "I don't have to put up with this" and walked out.

14. By the time plaintiff reached her office, she was having difficulty breathing. She had pain in her chest, left arm, and an excruciating headache. She left the store to seek medical advice, but when she reached the upper mall level, near McRae's Department Store, she heard someone shouting "Carol, Carol, Carol." She turned around and saw that Moretti had run after her into the mall. He stopped her and demanded that she go back to the store with him. Plaintiff feared for her

physical safety and pleaded with Moretti to leave her alone. Many people were passing them in the mall and staring. Moretti told her "You're a lying bitch" and plaintiff started crying. He asked if she was "abandoning her job." She replied no, that she was going home to call her doctor as he had made her so stressed she was physically sick. When Moretti finally let her go, she proceeded down the mall, terrified that he was going to follow her again. She proceeded home and called her doctor's office, where she was advised to go to the emergency room. Her blood pressure was extremely elevated when they checked it. Due to Moretti's harassment and hostility and assault of her, her physician placed her on medical leave.

15. Plaintiff immediately reported the incident of November 25, 2000, in writing, to Dillard's management. Neither Willey, Dillard's director for the Middle Tennessee, North Alabama District, nor his boss, Squires, nor anyone from Dillard's corporate office ever called to ask her about the incident. Instead, Willey responded to her complaint with a letter, typed in all capital letters, accusing her of lying and justifying the actions of Moretti and Davis. He also questioned plaintiff's eligibility for salary continuation benefits while she was out on medical leave. He stated that plaintiff had "embellished" her account of the encounter with Moretti. Willey's alleged response increased plaintiff's fear of Dillard's management and convinced her that reporting harassment, according to the harassment policy, had been a useless exercise.

16. While plaintiff was off work on salary continuation and medical leave, Dillard's terminated her salary continuation benefits under false pretenses as retaliation for her complaints and as further discrimination and harassment against her. Moretti placed false requirements upon her to reinstate the benefit, knowing she could not comply. When she attempted to comply, and provided information that to any reasonable person would be sufficient, he created more onerous

requirements. Plaintiff complained to Dillard's; she was without a livelihood and even her health insurance, which was deducted from her paycheck, was threatened. After several weeks, Dillard's finally responded, admitted Moretti was wrong, and reinstated her benefit. However, they never informed plaintiff if Moretti was disciplined for his retaliatory and wrongful termination of her benefits.

17. On February 16, 2001, plaintiff filed a charge of discrimination with the EEOC in a timely manner. The charge provided yet more notice to Dillard's of Moretti's erratic, violent, and discriminating behavior towards older females.

18. As a result of Dillard's actions, plaintiff was prevented from performing the duties and functions of her job, at which she had been competent and successful for many years. She has been caused to incur damages, to suffer anxiety, depression, fear, consternation, stress and mental anguish. She has been subject to physical symptoms. Plaintiff required professional care and treatment from psychiatrists. Her confidence was shattered. Her career with the corporation was cut short. Plaintiff was chased down the mall like a shoplifter or other criminal. These degradations were not visited upon males or younger females.

## COUNT I: SEX DISCRIMINATION: DISPARATE TREATMENT, FAILURE TO PROMOTE

19. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

20. This is a claim against Dillard's for the intentional discrimination against plaintiff because of her sex in violation of Title VII.

21. Plaintiff is female and therefore a member of a protected class.

22. As an ASM, plaintiff had reached the "glass ceiling" at Dillard's: she was over 40, paid more than younger people with less experience would earn, and "going nowhere with the company" as promotions to store manager and operations managers were generally (though not always) reserved for male employees or younger females.

23. Dillard's maintained no post and bid or comparable system for informing employees of openings for which they might be qualified. Despite its size, Dillard's has no Human Resources department.

24. Plaintiff made it known to her managers she was interested in promotion and requested interviews for several operations manager openings she heard of by word of mouth from May 1998 until sometime after August 22, 2000. On the later date she applied for an assistant store manager job (formerly operations manager) at the Dillard's store in Oxford, Alabama. Although she met all of Dillard's requirements and even those imposed by Willey, the job went to a younger male.

25. In addition to being passed over for promotion sometime after her application on August 22, 2000, for the position in Oxford, Alabama, plaintiff was passed over in favor of younger males for assistant store manager positions as follows: she saw a male shoes manager (Store 429) in his twenties offered an assistant store manager in Virginia despite low numbers in his department; she was passed over in favor of a younger male for assistant store manager position in Knoxville, Tennessee, Store 429, in May, 1998; she saw the men's area manager of Store 456, a male in his late twenties or early thirties, promoted to assistant store manager in Florence, Alabama, although plaintiff was not given the opportunity to interview for the position; she saw a male assistant ASM in his early thirties promoted to an assistant store manager position in Knoxville, Tennessee in May 2000 (jumping past ASM position). Willey told plaintiff she was qualified for the position, but told

her he did not choose her because he felt she should stay in the Huntsville store at least one year. However, the male candidate who received the job had been in the Huntsville store as Men's Store assistant ASM only a few weeks when he received the promotion. Birdyshaw again was passed over for a Senior Assistant Buyer position in the accessory division in Little Rock, Arkansas (which she was told was equivalent to an assistant store manager position and would be good experience for continued advancement). In August 2000 Birdyshaw had been in the Huntsville store over a year and was once again passed over for the assistant store manager position in Oxford, Alabama that went to a less qualified male.

26. Many of these missed opportunities were accompanied by statements attempting to justify the promotion of males with lesser qualifications and experience. These reasons were pretextual and offered to hide the real reason for failure to promote, which was discrimination against females because of their sex. She was also told by her manager that it looked like she was "not going anywhere with Dillard's." This glass ceiling began causing her anxiety about her career and position with Dillard's, as she saw young males being promoted over her and having access to information about job openings that she did not have.

27. Birdyshaw's last rejection in favor of a younger male for promotion to assistant store manager or equivalent position occurred after August 22, 2000, within 180 days of the filing of the charges with the EEOC.

28. Dillard's disparate treatment of plaintiff concerning opportunities for advancement and promotion, contributed to the environment where older female employees were viewed as "going nowhere with Dillard's." As a result of this practice, older female ASMs were seen as liabilities by store managers like Moretti who sought to run them off through hostility, harassment, and

intimidation. The corporate failure to promote women contributed to the creation of a hostile environment for older women.

29. As a proximate result of Dillard'ss unlawful intentional discrimination, plaintiff and other female ASMs and employees similarly situated have suffered financial loss, economic loss, loss of employment career opportunities, shame, humiliation, emotional distress, and mental anguish.

30. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, compensatory damages, mental anguish, interest, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact or the court may assess.

**COUNT II: SEX DISCRIMINATION: DISPARATE TREATMENT**

31. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

32. This is a claim against Dillard's for the intentional discrimination against plaintiff because of her sex in violation of Title VII.

33. Plaintiff is female and therefore a member of a protected class.

34. Birdyshaw's membership in a protected class was a motivating factor in Dillard's subjecting her to terms and conditions of employment less favorable than that enjoyed by male employees.

35. It is clear that Dillard's has a "glass ceiling" above which older female managers generally may not rise unless they are useful to Dillard's as tokens and to provide cover for the illegal and discriminatory actions of their management. Since most females are "going nowhere with the company" they are targeted by aggressive store managers such as Moretti for hostile treatment in an effort to make them quit. Male employees are not treated in such a fashion.

36. The physical and mental abuse, hostility, harassment, and retaliation against female employees who complain, are reserved for older female ASMs who are seen as "going nowhere with the company." The motivating factor behind this discriminatory treatment and disparate treatment of older female ASMs at Dillard's is due to their gender. Males are not treated in this fashion.

37. As a proximate result of Dillard's unlawful intentional discrimination, plaintiff and other female ASMs and employees similarly situated have suffered financial loss, economic loss, loss of employment career opportunities, shame, humiliation, emotional distress, mental anguish, and trauma.

38. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, compensatory damages, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact or the court may assess.

**COUNT III: HOSTILE WORK ENVIRONMENT**

39. The preceding allegations of this complaint are hereby incorporated as if set forth fully in this paragraph.

40. This is a claim against Dillard's Inc. for subjecting plaintiff to a hostile work environment discriminating against her as a female employee. The defendant subjected plaintiff to threatening, bellicose, demeaning, hostile and offensive conduct by her supervisor because of her sex on a daily, constant, and continuing basis that affected the terms and condition of her employment and (negatively) affected her ability to perform the duties and functions of her job.

41. Dillard's knew or should have known of the harassment of plaintiff and other female employees but failed to take prompt remedial action. Dillard's ratified the harassing conduct of Moretti.

42. As a proximate result of Dillard's unlawful intentional discrimination, plaintiff and other female ASMs and employees similarly situated have suffered financial loss, economic loss, loss of employment career opportunities, shame, humiliation, emotional distress, mental anguish, and trauma.

43. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, compensatory damages, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact or the court may assess.

**COUNT IV: TITLE VII: DISPARATE IMPACT CLAIM**

44. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

45. This is a claim against Dillard's for the employment policy and practice of eliminating previous Mercantile Group ASMs from stores which it acquired from the Mercantile Group as described above. Dillard's policy, practice, or procedure was to bring in "Dillard's" store managers to "clean up the [Mercantile] stores" by running off the previously successful Mercantile ASMs to make room for younger or male "Dillard's" personnel who would be totally subject to the demands Dillard's places on its ASMs.

46. Dillard's policy of running off the previous ASMs employed by the Mercantile Group resulted in a disproportionate number of females losing their jobs as Dillard's ASMs. At Store Number 456 there were approximately twelve to thirteen ASMs when Dillard's took over, all but two of which were female. In the months following Moretti's arrival several females, but no males, lost their jobs, had nervous breakdowns, or were otherwise injured as a result of this policy.

47. As a proximate result of Dillard's disparate impact discrimination, plaintiff and other female ASMs and employees similarly situated have suffered financial loss, economic loss, loss of employment and career opportunities, shame, humiliation, emotional distress and mental anguish.

48. Plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, compensatory damages, mental anguish, costs, attorneys fees, punitive damages and any and all such other relief the trier of fact or court may assess.

**COUNT V: RETALIATION**

49. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

50. This is a claim against Dillard's for retaliation by Dillard's against plaintiff for having exercised her federal statutory rights or seeking to help others exercise their statutory and constitutional rights.

51. Plaintiff was retaliated against for complaining about the actions of store manager Moretti as set forth above, where he chased her down in the mall and accused her of being a "lying bitch" in front of shoppers in the mall. She was retaliated against when Willey sent her a threatening letter claiming she had "embellished" the truth in her complaint and stating that he would discuss Dillard's concerns with her when she returned from medical leave which was "only for those who are truly unable to work." She was further retaliated against when Moretti and other Dillard's personnel cut off her salary continuation benefits under false pretenses, which were only restored after she wrote several letters to corporate management in Little Rock, Arkansas. Despite the restoration of those benefits, she was placed in a very precarious financial situation while her salary

continuation benefit was cut off and she had to find money to pay for her health insurance which was paid out of her paycheck.

52. As a proximate result of Dillard's retaliatory conduct, plaintiff suffered financial loss, economic loss, loss of employment, shame, humiliation, emotional distress and trauma.

53. Plaintiff seeks declaratory and injunctive relief, award of lost employment and career benefits and wages, back pay, front pay, interest, compensatory damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys fees, punitive damages and any and all such other relief the trier of fact may assess.

**COUNT VI: WANTON HIRING/SELECTION, SUPERVISION, TRAINING, AND RETENTION**

54. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

55. Dillard's knew of or acted with reckless disregard towards Moretti's conduct alleged in the preceding factual allegations, his propensity to commit such conduct, and his pattern and practice of inappropriate, intimidating, offensive, crude, outrageous conduct toward older female employees under his supervision.

56. Dillard's wantonly selected Moretti, hired him, and placed him in a management position over plaintiff. Dillard's wantonly failed to train Moretti, Willey, and other management employees to prevent gender-based harassment, assaults, batteries, hostility, and outrageous conduct in the workplace.

57. Dillard's wantonly failed to train Moretti, Davis, Willey, Squires, and other management employees to handle and respond to complaints about sexual harassment, assaults,

batteries, outrageous conduct, hostility in the workplace. Dillard's and Willey wantonly failed to investigate Birdyshaw's complaints about harassment, and other outrageous conduct in the workplace.

58. Dillard's and Willey wantonly failed to supervise Moretti when it knew or should have known of his pattern of inappropriate conduct in the workplace set forth above.

59. Dillard's and Willey wantonly retained Moretti in a management position when they knew or should have known of his pattern of inappropriate conduct in the workplace, and did not discipline or terminate him until he used a knife and cut an alleged shoplifter in the mall. Even then Dillard's retained him as manager for approximately two weeks before terminating him.

60. The wanton failure to properly supervise and train Moretti and other management employees and the wanton retention of Moretti by Dillard's caused plaintiff to suffer severe emotional distress, mental anguish, and caused her to suffer lost wages, and other employment related benefits, caused her to incur costs to seek counseling, caused her to suffer lost wages and benefits in past and in the future, and will cause her to incur expenses for psychological or medical treatment. Plaintiff demands a judgment against Dillard's, awarding compensatory (or in the alternative, nominal) damages, and punitive damages, costs, and interest as allowed by law.

**COUNT VII: NEGLIGENT HIRING/SELECTION, SUPERVISION, TRAINING, INVESTIGATION, AND RETENTION**

61. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

62. Dillard's knew of or acted with negligent disregard towards Moretti's conduct alleged in the preceding factual allegations, his propensity to commit such conduct, and his pattern and

practice of inappropriate, intimidating, offensive, crude, and outrageous conduct toward female employees under his supervision.

63. Dillard's negligently selected Moretti, hired him, and placed him in a management position over plaintiff. Dillard's negligently failed to train Moretti, Willey, Davis, Squires and other management employees to prevent gender-based harassment, assaults, hostility, and outrageous conduct in the workplace.

64. Dillard's negligently failed to train Moretti, Willey, Davis, Squires and other management employees to handle and respond to complaints about harassment, assaults, batteries, outrageous conduct, and hostility in the workplace. Dillard's, Davis, Willey and Squires negligently failed to investigate Birdyshaw's complaints about sexual harassment, and other outrageous conduct in the workplace.

65. Dillard's, Squires and Willey negligently failed to supervise Moretti when they knew or should have known of his pattern of inappropriate conduct in the workplace set forth above.

66. Dillard's, Squires and Willey negligently retained Moretti, an unfit and dangerous employee, in a management position when they knew or should have known of his pattern of inappropriate conduct in the workplace, until two weeks after he allegedly used a knife and cut an alleged shoplifter in the mall.

67. The negligent failure to properly supervise and train Moretti and other management employees and the negligent retention of Moretti by Dillard's caused plaintiff to suffer severe emotional distress, mental anguish, and have caused her to suffer lost wages, and other employment related benefits, caused her to incur costs to seek counseling, caused her to suffer lost wages and

benefits in the past and future, and will cause her to incur expenses for psychological or medical treatment.

68. Plaintiff demands a judgment against Dillard's, awarding compensatory damages and such other damages as may be allowable under law, costs, and interest as allowed by law.

**COUNT VIII: INTENTIONAL HIRING/SELECTION, SUPERVISION, TRAINING, INVESTIGATION AND RETENTION**

69. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

70. Dillard's knew of or acted with intentional disregard towards Moretti's conduct alleged in the preceding factual allegations, his propensity to commit such conduct, and his pattern and practice of inappropriate, intimidating, offensive, crude, and outrageous conduct toward female employees under his supervision.

71. Dillard's intentionally selected Moretti, hired him, and placed him in a management position over plaintiff. Dillard's intentionally failed to train Moretti, Davis, Squires, Willey, and other management employees to prevent harassment, assaults, batteries, hostility, and outrageous conduct in the workplace.

72. Dillard's intentionally failed to train Moretti, Willey, and other management employees to handle and respond to complaints about sexual harassment, assaults, batteries, outrageous conduct, hostility in the workplace. Dillard's and Willey intentionally failed to adequately investigate Birdyshaw's complaints about harassment, and other outrageous conduct in the workplace.

73. Dillard's and Willey intentionally failed to supervise Moretti when it knew or should have known of his pattern of inappropriate conduct in the workplace set forth above.

74. Dillard's and Willey intentionally retained Moretti in a management position when it knew or should have known of his pattern of inappropriate conduct in the workplace, until he used a knife and cut an alleged shoplifter in the mall.

75. The intentional failure to properly supervise and train Moretti and other management employees and the intentional retention of Moretti by Dillard's caused plaintiff to suffer severe emotional distress, mental anguish, and caused her to suffer lost wages, and other employment related benefits, caused her to incur costs to seek counseling, caused her to suffer lost wages and benefits in the past and future, and will cause her to incur expenses for psychological or medical treatment.

76. Plaintiff demands a judgment against Dillard's, awarding compensatory damages (or in the alternative, nominal damages) and punitive damages, costs, and interest as allowed by law.

**COUNT IX: AGE DISCRIMINATION**

77. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

78. As a proximate consequence of the defendants' actions as described above, plaintiff was intentionally discriminated against based on her age by the Defendants. Plaintiff was above the age of forty (40) and part of the protected category. Plaintiff was subjected to harassment and hostility until she had to leave on medical leave and was eventually terminated when Dillard's would not accommodate her request to transfer to another store location or extend her leave so she would not work under Moretti. Plaintiff was also replaced by a younger individual. Dillard's did not

subject younger females or males to the outright hostility exhibited by Moretti as part of his campaign to rid Dillard's of older female ASMs.

79. The hostile environment discrimination and disparate treatment occurred in violation of plaintiff's rights under the Age Discrimination in Employment Act, and the Alabama Age Discrimination Act.

80. Plaintiff was replaced by individuals that were both younger, and less qualified than she was for the position she held.

81. Defendant gave plaintiff pretextual excuses for the adverse employment actions taken against her. The real reason for the adverse actions was that Dillard's wished to rid itself of older and female ASMs.

82. As the consequence of defendants' actions, plaintiff suffered severe emotional distress, mental anguish, and lost wages, and other employment related benefits, lost a promising career, and caused to incur costs to seek counseling, and suffered lost remuneration in the future. The conduct of defendant was sufficiently egregious to justify or substantiate an award of liquidated damages.

83. Plaintiff requests the following relief be included in a judgment against the defendant under the Age Discrimination in Employment Act:

(a) issue a judgment declaring that the defendant violated the rights of plaintiff under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., as amended and the Alabama Age Discrimination Act;

(b) award plaintiff compensatory and punitive damages in an amount to be determined at trial;

(c) award plaintiff compensatory damages to be established pursuant to the statute;

(d) award plaintiff her costs, disbursements, and reasonable attorneys fees incurred in bringing this action; and

(e) grant back pay, liquidated damages, and such other, further, different legal and equitable relief as this court may deem just and equitable and as afforded under the ADEA and the Alabama Age Discrimination Act.

**COUNT X: RETALIATION**

84. The preceding allegations of this Complaint are hereby incorporated as if set forth fully in this paragraph.

85. Dillard's, through Moretti and Davis, terminated plaintiff's employment on November 26, 2001. The termination was supposedly pursuant to a policy requiring termination if the employee does not return to work after a year's leave. However, plaintiff had requested a transfer to another store or an extension of her leave so as not to work for Moretti, which was a requirement of her returning pursuant to her doctor's instructions. Dillard's did not respond to this request for transfer to another store, although Birdyshaw's requests for transfers earlier in her career had always been granted. The alleged policy was pretext for further discrimination and retaliation against her for having filed the charge of discrimination.

86. Plaintiff timely filed a charge concerning Dillard's retaliatory and discriminatory actions in refusing to accommodate her request for transfer and in terminating her employment, and has received her notice of right to sue from the EEOC. True and correct copies of the charge and right to sue notice have been attached hereto as Exhibit B.

87. As a result of Dillard's retaliatory and discriminatory actions against plaintiff, plaintiff was terminated from her employment, suffered additional financial loss, economic loss, loss of employment career opportunities, shame, humiliation, emotional distress, and mental anguish.

88. Plaintiff seeks declaratory and injunctive relief, awards of lost employment benefits and wages, back pay, front pay, compensatory damages, mental anguish, interest, costs, attorneys' fees, punitive damages, and any and all such other relief the trier of facts for the court may access.

Respectfully submitted,

James E. Ferguson, III
Alabama State Bar FER-013

Michael L. Jackson
Alabama State Bar JAC-026

OF COUNSEL:

WALLACE, JORDAN, RATLIFF & BRANDT, L.L.C.
P.O. Box 530910
Birmingham, Alabama 35253
Telephone: 205-870-0555
Telefax: 205-871-7534

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY OF ALL CLAIMS SO TRIABLE.

Of Counsel

**Certificate of Service**

I certify that I have on this 12th day of April, 2004, served a copy of the foregoing to Counsel for record for Defendant by United States Mail, postage prepaid and addressed as follows:

Timothy A. Palmer, Esq.
Brian R. Bostick, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL 35203-3204

Of Counsel

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY
☐ FEPA
☒ EEOC

CHARGE NUMBER

_______________________________ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| **Carol Birdyshaw** | **(256) 895-6118** |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| **6612 Robinhood Lane** | **Huntsville, AL 35806** | **10-21-49** |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME. *(If more than one list below).*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| **Dillard's Inc.** | **approximately 60,000** | **(501) 376-5972** |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| **1600 Cantrell Road** | **Little Rock, AR 72203** | **Pulaski** |

| NAME | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| **Dillards Department Store #456** | **(256) 837-5900** |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| **Madison Square Mall** | **Huntsville, AL 35806** | **Madison** |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☒ AGE
☒ RETALIATION ☐ NATIONAL ORIGIN ☐ DISABILITY ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
*EARLIEST (ADEA/EPA)* **October 1998** — *LATEST (ALL)* **February 9, 2001**

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is need, attach extra sheet(s)):*

**I have been subjected to a hostile work environment on the basis of my sex (female) and my age (over 40). I have also been discriminated against by the failure to promote me to positions for which I was qualified when younger males with less experience were promoted. The last such failure to promote incident occurred sometime after Aug. 22, 2000. The hostile environment arose after Steve Moretti took over as store manager of the Huntsville store in Oct. 2000. The hostile environment culminated in an incident on Nov. 25, 2000, in which Mr. Moretti accused me of lying and screamed and yelled at me, and then when I left the store, followed me into the mall and screamed at me, calling me a "lying bitch." I complained to his supervisor, Rick Willey, and others, but Mr. Willey never talked to me, and responded in writing that I had "embellished" the truth and accused me of lying. This hostility caused so much anxiety and depression to me that my doctor placed me on medical leave since then. I have since been retaliated and discriminated against by the termination of my salary continuation benefits under false pretenses while on medical leave, and they have not been reinstated even though I have provided information to the company to disprove the false basis used to terminate the benefit. I believe that I, and other women similarly situated, have been discriminated against in violation of the Age Discrimination in Employment Act and Title VII of the Civil Rights Act as amended in the terms and conditions of my employment by Dillard's, Inc.**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

RECEIVED FEB 16 2001 EEOC

2/15/01 — Carol Birdyshaw

Date — Charging Party *(Signature)*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)

## PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974, Public Law 93-579: Authority for requesting the personal data and the uses are given below.)

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, CHARGE OF DISCRIMINATION, March 1984.

2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. §211, 29 U.S.C. § 626.

3. PRINCIPAL PURPOSE(S). The purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.

4. ROUTINE USES. This form is used to determine the existence of facts which fall within the Commission's jurisdiction to investigate, determine, conciliate and litigate charges of unlawful employment practices. Information provided on this form will be used by Commission employees to guide the Commission's investigatory activities. This form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. A copy of this charge will ordinarily be served upon the person against whom the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Charges must be in writing and should identify the parties and action or policy complained of. Failure to have a charge which identifies the parties in writing may result in the Commission not accepting the charge. Charges under Title VII must be sworn to or affirmed. Charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to provide the requested information.

6. [ ] Under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, this charge will be deferred to and will be processed by the State or local agency indicated. Upon completion of the agency's processing, you will be notified of its final resolution in your case. If you wish EEOC to give Substantial Weight Review to the agency's findings, you must send us a request to do so, in writing, within fifteen (15) days of your receipt of the agency's finding. Otherwise, we will adopt the agency's finding as EEOC's and close you case.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of the Civil Rights Act of 1964, as amended, and Section 4(d) of the Age Discrimination in Employment Act of 1967, as amended, state:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed a practice made an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

The Equal Pay Act of 1963 contains similar provisions. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.

EEOC Form 161 (10/96) U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: Carol Birdyshaw
% James E. Ferguson, III
Wallace, Jordan, Ratliff & Brandt, LLC
P O. Box 530910
Birmingham, AL 35253

From: Birmingham District Office
Ridge Park Place
1130 22nd Street South
Suite 2000
Birmingham, AL 35205

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130-A1-1301 | Andrew R. Abdulhaqq, Investigator | (205) 731-1029 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ x ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)* ______________________

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Cynthia G. Pierre

Cynthia G. Pierre, District Director

7/1/02 *(Date Mailed)*

Enclosure(s)

cc: Dillard Store Services, Inc.
% Carol A. Koros
Legal Assistant
P. O. Box 486
Little Rock, AK 72203-0486

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit before 7/1/98 -- *not* 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION -- Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

AGENCY
☐ FEPA
☒ EEOC

CHARGE NUMBER

______________________________ and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* Carol Birdyshaw | | HOME TELEPHONE *(Include Area Code)* 205-342-9816 |
|---|---|---|
| STREET ADDRESS 800 Energy Center Blvd., Apt. 4111 | CITY, STATE AND ZIP CODE Northport, AL 35473 | DATE OF BIRTH 10-21-49 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME. *(If more than one list below).*

| NAME Dillard's Inc. | NUMBER OF EMPLOYEES, MEMBERS approximately 60,000 | TELEPHONE *(Include Area Code)* (501) 376-5972 |
|---|---|---|
| STREET ADDRESS 1600 Cantrell Road | CITY, STATE AND ZIP CODE Little Rock, AR 72203 | COUNTY Pulaski |
| NAME Dillards Department Store #456 | | TELEPHONE NUMBER *(Include Area Code)* (256) 837-5900 |
| STREET ADDRESS Madison Square Mall | CITY, STATE AND ZIP CODE Huntsville, AL 35806 | COUNTY Madison |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☒ AGE
☒ RETALIATION ☐ NATIONAL ORIGIN ☒ DISABILITY ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
*EARLIEST (ADEA/EPA)* ________ *LATEST (ALL)* Nov. 26,2001

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is need, attach extra sheet(s)):*

**I have been discriminated against and retaliated against for having filed a charge of discrimination against my former employer, Dillard's, Inc. On February 16, 2001, I filed a charge of discrimination with the Equal Employment Opportunity Commission for discrimination based on sex, age, and retaliation (Charge No. 130-A1-1301, Equal Employment Opportunity Commission, Birmingham District Office). Since that time I believe I have been retaliated against further for having filed this charge. Due to the hostile environment I experienced at Dillard's, I experienced disabling physical and mental conditions. My doctor placed me on medical leave, and I continued under a physician's care. My last day on the job was November 25, 2000, when I was subjected to hostility, false accusations, and screaming, and I was pursued through the mall when I was trying to go to the doctor to seek treatment for what I knew was an attack of high blood pressure. This was all at the hands of the store manager, Steve Moretti, and is the subject of the previous charge, as was the failure of Dillard's to do anything in response to my complaints.**

**(Continued on separate page)**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

April 22, 2002 Carol Birdyshaw
Date Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)

RECEIVED
MAY 01 2002
EEOC

**PRIVACY ACT STATEMENT**

(This form is covered by the Privacy Act of 1974, Public Law 93-579: Authority for requesting the personal data and the uses are given below.)

1. FORM NUMBER/TITLE/DATE. EEOC Form 5, CHARGE OF DISCRIMINATION, March 1984.

2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. §211, 29 U.S.C. § 626.

3. PRINCIPAL PURPOSE(S). The purpose of the charge, whether recorded initially on this form or in some other way reduced to writing and later recorded on this form, is to invoke the jurisdiction of the Commission.

4. ROUTINE USES. This form is used to determine the existence of facts which fall within the Commission's jurisdiction to investigate, determine, conciliate and litigate charges of unlawful employment practices. Information provided on this form will be used by Commission employees to guide the Commission's investigatory activities. This form may be disclosed to other State, local and federal agencies as may be appropriate or necessary to carrying out the Commission's functions. A copy of this charge will ordinarily be served upon the person against whom the charge is made.

5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Charges must be in writing and should identify the parties and action or policy complained of. Failure to have a charge which identifies the parties in writing may result in the Commission not accepting the charge. Charges under Title VII must be sworn to or affirmed. Charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to provide the requested information.

6. [ ] Under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, this charge will be deferred to and will be processed by the State or local agency indicated. Upon completion of the agency's processing, you will be notified of its final resolution in your case. If you wish EEOC to give Substantial Weight Review to the agency's findings, you must send us a request to do so, in writing, within fifteen (15) days of your receipt of the agency's finding. Otherwise, we will adopt the agency's finding as EEOC's and close you case.

NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of the Civil Rights Act of 1964, as amended, and Section 4(d) of the Age Discrimination in Employment Act of 1967, as amended, state:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed a practice made an unlawful employment practice by this title or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title.

The Equal Pay Act of 1963 contains similar provisions. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made.



G:\Clients\004494\0002\charge of discrimination -2.wpd

**Charge of Discrimination and Retaliation**
**Carol Birdyshaw v. Dillard's, Inc.**
**Continuation of Statement of Particulars**

(Continuation of charge particulars)

Dillard's interfered with my benefits as set forth in the previous charge (salary continuance), which were restored only when I complained to corporate headquarters. Thereafter I was placed on long-term disability for a period of time. My physicians indicated I could return to work if I did not work for this same manager. On several occasions I made written requests of Dillard's to transfer me to another one of their stores so I would not have to work under Mr. Moretti. I sent a letter to Dillard's on March 16, 2001, and never received a response. I did receive a letter dated September 17, 2001, from Mary Davis, the operations manager (assistant store manager) from the store in which I worked stating that they had received my doctor's note indicating I would remain on medical leave until December 1, 2001, and she said she was writing to "officially advise you that you will reach your maximum leave of absence on 11/25/01. You will need to return to work on or before 11/26/01 or you will be terminated for failure to return from leave of absence." I wrote Ms. Davis a letter dated September 26, 2001, advising her that I had previously requested to transfer and asked her to consider this letter as a request for transfer to the Yuma, Arizona, store (this was the closest Dillard's store to El Centro, California, where I was staying at the time with my mother who was dying). I followed that up with a letter of October 19, 2001, enclosing a copy of my doctor's note stating that I was to remain under his care until February 1, 2002, and could not return to work until that time. Again I requested, as a reasonable accommodation to my disability, that Dillard's extend my absence until February 1, 2002. I said, "I need my job and do not want to be terminated but as you can see my doctor says I cannot return to work by November 26, 2001."

Mary Davis responded with a letter dated October 23, 2001, which incorrectly stated I had received 6 months of salary continuance, 6 months of regular leave of absence, "and an additional 6 months of leave of absence based upon your long service. This will run out on November 26, 2001." She stated they could not make an exception to that policy.

Dillard's terminated my employment on or about November 26, 2001. My request for reasonable accommodation and transfer to another store where I would not have to work for Mr. Moretti, or an extension of the leave of absence if the transfer was not possible, was denied. I did not receive 18 months of leave as implied in Mary Davis's letter, as I was terminated one year after my last day of work on the job at Dillard's. I believe they would have granted my request for a transfer had I not filed the charge of discrimination with the EEOC. I have heard that other area sales managers who participated in the investigation of my charge were retaliated against also.

I also believe Dillard's would have extended my leave as a reasonable accommodation, if I had not filed this charge. Early in my career with Dillard's I requested and was granted transfers several times. I know of no reason why such a transfer would have been unreasonable in this instance. I believe Dillard's failure to grant my request for either a transfer or an extension of unpaid leave of absence until I recovered was discriminatory and retaliation for having filed the previous charge, of age, sex and retaliation discrimination, and also constitutes discrimination against a person with a disability or discrimination because they perceived me to be disabled. Additionally, because when I was younger, Dillard's did grant my requests for transfers, and because of the discrimination detailed in my previous charge, Dillard's refusal to grant this request may be due to its discrimination against older females.



# DISMISSAL AND NOTICE OF RIGHTS

To: Carol Birdyshaw
800 Energy Ctr. Blvd, Apt. 4111
Northport, AL 35473

From: Equal Employment Opportunity Commission
Ridge Park Place
1130 South 22th Street
Birmingham, Alabama 35205

[ ] *On behalf of person(s) aggrieved whose identity is*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130 A20 1974 | Andrew R. Abdulhaqq, Investigator | (205) 731-1029 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ] We cannot investigate your charge because it was not filed within the time limit required by law.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)* ____________

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

[signature]

Cynthia G. Pierre, District Director

**September 30, 2002**
*(Date Mailed)*

Enclosure(s)

cc: James E. Ferguson, Charging Party's Attorney
Wallace, Jordan, Ratliff & Brandt, L.L.C.
P.O. Box 530910
Birmingham, AL 35253

Carol A. Koros Respondent's Representative
Dillard Store Services, Inc..
P.O. Box 486
Little Rock, AK 72203-0486

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

## PRIVATE SUIT RIGHTS -- Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit before 7/1/98 -- *not* 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA backpay recovery period.

## ATTORNEY REPRESENTATION -- Title VII and the ADA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

FILED

04 MAR -9 PM 1:28

U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

**CAROL TOMBLIN;**
**SYLVIA PARKER;**
**CAROL BIRDYSHAW,**

**Plaintiffs,**

**v.**

**DILLARD'S INC.,**

**Defendant.**

**CASE NO. CV 02-B-2389-NE**

CV-04-B-0738-NE

ENTERED
MAR - 9 2004

**ORDER**

The court finds that the claims of the plaintiffs in the above-referenced civil action are separate and distinct, and should be handled in separate cases. Therefore, the claims of Carol Tomblin are **SEVERED** from those of Sylvia Parker and Carol Birdyshaw and shall remain under this case number and assigned to the undersigned. The Clerk of Court is **DIRECTED** to create new case files, under new civil action numbers from the Northeastern Division of this court, for the claims of each of the remaining plaintiffs, and shall directly assign those new civil actions to the undersigned. The Complaints when filed will be deemed filed as of the date the instant case was filed for purposes of any statute of limitations.

Further, on or before **April 12, 2004,** counsel for plaintiffs is **ORDERED** to amend the Complaint to replead the claims of each plaintiff separately in the appropriate civil action. By the same date, plaintiffs Sylvia Parker and Carol Birdyshaw are **DIRECTED** to each pay the requisite filing fee of $150.00 for their respective cases.

**DONE** this 9th day of March, 2004.

Sharon Lovelace Blackburn

SHARON LOVELACE BLACKBURN
United States District Judge